UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KYLE ALLEN BOLTON,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS, STRATOSPHERE,<br>and HOOSIER PERSONNEL STAFFING,<br><br>Defendants. | CAUSE NO. 1:22-CV-228-HAB-SLC |

## OPINION AND ORDER

Hoosier Personnel Staffing LLC-5 (named in the complaint as Hoosier Personnel Staffing), by counsel, filed a motion to dismiss, arguing that the complaint filed by Kyle Allen Bolton, a prisoner without a lawyer, does not allege any wrongdoing on their part. ECF 89. Bolton filed a response. ECF 92, 107, 110. Hoosier has not filed a reply, and the time to do so has passed. Additionally, General Motors, by counsel, moves for partial dismissal, arguing Bolton's hostile work environment claim was not included in Bolton's charge with the Equal Employment Opportunity Commission ("EEOC") and was inadequately pled. ECF 101. Bolton filed a response. ECF 108, 109. And General Motors filed a reply.[1] ECF 111. The motions are ready to be decided.

---

[1] After the briefing was complete on this partial motion to dismiss, Bolton submitted additional arguments in support of denying General Motors' motion. ECF 116, 117, 118, 119. General Motors objected to these additional briefs. ECF 121, 124. Bolton argues that a surreply is necessary to address how the racial slur of being called a white racist works in conjunction with the denial of gate duty to create a hostile work environment. ECF 123. General Motors' reply brief did not introduce new arguments that need a response from Bolton. The court has reviewed the additional filings (ECF 116, 117, 118, 119) and concludes that they rehash arguments already made and so will be disregarded when ruling on this motion.

**I. Facts**

As relevant here, Bolton was granted leave to proceed "against General Motors, Stratosphere, and Hoosier Personnel Staffing for monetary damages for demoting him to an inferior position in April 2021 because of his race or color in violation of Title VII of the Civil Rights Act of 1964[, 42 U.S.C.A. § 2000e et seq.]" and "against General Motors and Stratosphere for monetary damages on a claim for a hostile work environment when he was prohibited from entering the building and forced to work outside his whole shift in violation of Title VII of the Civil Rights Act of 1964[.]" ECF 95 at 8. He was also granted leave to proceed "against General Motors and Stratosphere for monetary damages for firing him in May 2021 in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964" and "against Stratosphere for monetary damages for publishing an allegedly defamatory statement that he is racist in an email to employees of General Motors, Stratosphere, and Hoosier Personnel Staffing, resulting in a demotion and lost work hours[.]" ECF 95 at 8-9. But those two claims are not challenged in these motions and therefore will proceed, unaffected by this order.[2]

According to the complaint, Hoosier is a staffing agency that placed Bolton with Stratosphere, a company that, in turn, staffed positions at a General Motors facility. ECF

---

[2] This case was screened because Bolton was a prisoner when he filed it, and therefore the court was required to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Defining the claims early on in an employment discrimination case is in tension with the standard in employment discrimination claims that "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013). The court defining the claims early on is not meant to artificially cabin the case as more information is learned through discovery.

2

52 at 6. Bolton explains that on April 30, 2021, someone from Hoosier called him to inform him that he was being fired from the position at General Motors because someone complained that he would not speak to them because they are Black. *Id.* at 3. He alleges that this accusation was credited only because the people involved believed he was white, even though he is African American. *Id.* at 4. He explains that he is a light-skinned African American who is often mistaken as white, and he asserts that he would have been treated differently in this work situation if they had known he was Black. *Id.*

When Bolton explained this to the Hoosier employee on the phone, he was told to go back into work that night for his shift. ECF 52 at 5-6. At work, his direct supervisor from Stratosphere told him to report to his usual position at the gate. *Id.* at 15. But when he got there, General Motors had deactivated his electronic entry badge, and he could no longer enter the building. *Id.* He was told to go home and come back on Monday. *Id.*

On Monday, May 3, 2021, when Bolton returned to General Motors, he learned that he was no longer allowed in the building and had been demoted to an inferior job position, which involved doing more laborious work outside on the trucks. ECF 52 at 15. He says being denied gate duty was fundamentally unfair because he earned that position through hard work. *Id.* at 18. When Bolton first began with Stratosphere, he had an outside position at General Motors in the deep of winter. *Id.* The outside positions began and ended with an hour inside at the gate, but the intervening hours were spent outside removing computer chips from trucks. *Id.* Bolton was promoted to an inside position after proving that he was dependable. *Id.*

About three weeks after his demotion, Bolton called the Human Resources Department at General Motors to speak to them directly about the situation. ECF 52 at 20. He alleges the HR staff were unwilling to acknowledge their mistake and kept hanging up the phone on him. *Id.* The next day, on May 25, 2021, he was informed that he was to be terminated from his position at Stratosphere due to General Motors claiming that he threatened them on the phone—an allegation that Bolton says was false. *Id.* Bolton alleges the only threat he made was to go to the Equal Employment Opportunity Commission with his complaints. *Id.*

Bolton alleges Hoosier had sympathy for him and moved him to another temporary work site. ECF 52 at 22. He related that a woman from Hoosier told him that they were going to see what they could do to promote his side of the story and "escalate" the General Motors situation up the system. *Id.* That new placement did not work out, and Bolton resigned from Hoosier. *Id.* He stated in his complaint that he did not harbor any animosity towards Hoosier, but he feels "they should've actively done more to protect [him] as a worker" because they knew what was going on. *Id.* at 34. Bolton says he included them as a defendant because they are in possession of the emails that he contends will prove his case and told him they will not turn the emails over without a subpoena. *Id.* He says he does not want any money from Hoosier. *Id.* He just wants the emails and for Hoosier to formally admit what General Motors and Stratosphere did to him. *Id.*

4

**II. Legal Discussion**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, and does not decide whether the plaintiff can ultimately prove his case. Fed. R. Civ. P. 12(b)(6); *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016). To that end, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in Bolton's favor. *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 448 (7th Cir. 2023). To survive dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted).

**A.** *The Complaint States a Claim Against Hoosier*

Hoosier argues that the complaint does not allege that it caused any harm. ECF 90 at 4. Hoosier notes that Bolton stated the main purpose he included Hoosier as a defendant was to obtain documents, and that purpose can be accomplished through

nonparty discovery, even if it is not a defendant. *Id.* Hoosier argues the complaint does not allege any actual claim against it. *Id.*

Bolton submitted three filings that could be considered a response. ECF 92, ECF 107, ECF 110. The court disregards the first one (ECF 92) because that was premised on the mistaken belief that the proposed order (ECF 90-1) Hoosier had submitted with its motion to dismiss was an order approved and entered by the court. It was not. This order provides the court's ruling on the motion to dismiss. Similarly, the court disregards the second filing (ECF 107) because that filing was in response to Hoosier's answer to the complaint (ECF 103) and does not address the argument raised in the motion to dismiss. Instead, the court will construe the third filing (ECF 110) as a response to the motion to dismiss.

In Bolton's response, he argues that Hoosier could be liable because it was aware of the situation at General Motors but did not act. ECF 110 at 1-2. Thus, the issue is to what extent Hoosier can be liable for not intervening in the actions of the of the companies where it places workers.

The court will assume that Hoosier, Stratosphere, and General Motors are all Bolton's "employers" for purposes of Title VII. *See Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 905 (7th Cir. 2018) ("For purposes of Title VII an employee can have more than one employer. An entity can be an indirect employer or a joint employer or have some other complex combined relationship with an employee." (citation omitted)). In looking at a joint-employer situation, the Seventh Circuit looked to the EEOC's

6

Compliance Manual for guidance on liability when a temporary employment agency, like Hoosier, sends an employee to a client, like Stratosphere or General Motors:

> [T]he [EEOC] guidance specifically addresses whether, when the firm and client qualify as joint employers, the firm can be responsible for discriminatory actions taken by the client. It concludes:
>
>> The firm is liable *if it participates* in the client's discrimination. For example, if the firm honors its client's request to remove a worker from a job assignment for a discriminatory reason and replace him or her with an individual outside the worker's protected class, the firm is liable for the discriminatory discharge. The firm also is liable if it *knew or should have known about the client's discrimination and failed to undertake prompt corrective measures within its control.*
>
> EEOC, No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, at 2260 (1997) (emphasis added).

*Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 812 (7th Cir. 2014).

The court is mindful that "an employer is answerable under Title VII only for 'its own' deeds[.]" *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). Thus, Hoosier cannot be liable for General Motors' decision to demote Bolton from a gate job to an outdoor job. But it could be liable if that decision was discriminatory, it knew or should have known that it was discriminatory, and it failed to take prompt corrective measures within its control. Whether there were any corrective measures Hoosier could have taken are not matters that needed to be pled in the complaint. At this point, the court concludes that Bolton has identified a theory of liability as to Hoosier.

**B.** *The Hostile Work Environment Claim Was Not Included in the EEOC Charge[3]*

---

[3] Although the motion was brought only by General Motors, the analysis here applies equally to Stratosphere, the other defendant named in this claim.

7

General Motors argues that the hostile work environment claim was not included in Bolton's EEOC charge. ECF 102 at 8. The EEOC charge, attached to the motion to dismiss,[4] stated:

> I am a qualified black individual who worked for General Motors from March 2021 until I was terminated on April 30, 2021.
>
> On or about April 30, 2021, I received notification that I was being terminated for allegedly making a racial remark about black people. However, I did not make any comments based on race. In addition, I believe I was accused of making the comment because it was assumed that I am white because I have a lighter skin color.
>
> For these reasons, I believe I was discriminated against based on my race, black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF 102-1 at 2. Bolton checked the box for discrimination based on race and color and did not indicate that it was a continuing action. *Id.* General Motors argues that the charge mentions only one discrete act and does not mention any hostile or abusive conditions of Bolton's employment. General Motors asserts a hostile work environment is not reasonably related to the discrete act of racial discrimination alleged in the EEOC complaint, nor could such a claim grow out of such a charge.

Before a plaintiff may bring a Title VII claim in federal court, he must first exhaust administrative remedies by filing a charge with the EEOC and receiving a right to sue letter. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quotation marks and citations omitted). "The primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a chance to settle the dispute, and it gives

---

[4] The court is allowed to consider the EEOC charge on a motion to dismiss. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

8

the employer notice of the employee's grievances." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015). After receiving a right to sue letter, a plaintiff may bring in a federal lawsuit only those claims that were included in his EEOC charge, or those that are "'like or reasonably related to the allegations of the EEOC charge and growing out of such allegations." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (cleaned up). "Claims are like or reasonably related when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge. The charge and complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Chaidez*, 937 F.3d at 1004 (emphasis in original) (quotation marks and citation omitted).

Bolton responds that he could not have included the hostile work environment claim in the EEOC charge because the charge was filed before the work environment became hostile. ECF 108 at 1. He notes that the EEOC charge was filed on May 3, 2021, about a termination on April 30, 2021. April 30 was the date that he was told he was going to be fired, but then told to go ahead and report to work, only to find that his badge had been deactivated and he had to go home. He filed the EEOC charge on May 3, 2021, before he reported to work third shift at General Motors and learned that he wasn't fired but he had been demoted to working outside. He wasn't actually terminated until May 25, 2021.

9

Bolton, thus, admits that he did not include the hostile work environment claim in the EEOC charge because he filed the charge before the environment became hostile. He argues that nonetheless there is overlap between the "gate duty incident" on April 30, 2021, and the hostile work environment because being called a white racist is a factor in both the discriminatory act and the environment being hostile. ECF 108 at 1. But the one-time use of a racial epithet in this situation is not enough to alert investigators of the employer that the charge might include a hostile work environment in addition to the termination. *See*, *e.g.*, *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 601 (7th Cir. 2014) ("[W]hile referring to colleagues with such disrespectful language is deplorable and has no place in the workforce, one utterance of the n-word has not generally been held to be severe enough to rise to the level of establishing liability."). And the EEOC charge does not otherwise describe ongoing conduct that is typical of a hostile work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."); *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 663-64 (7th Cir. 2000) (EEOC charge alleging sex and national origin discrimination and listing three incidents in which plaintiff was treated differently from non-Mexican male officer was not reasonably related to claim brought in federal complaint alleging repeated sexual harassment on the basis of pictures; jokes; gestures; comments about plaintiff's body, sexual behavior, and national origin; and other behavior). Nor could a hostile work environment claim reasonably be expected to grow out of an EEOC investigation into the termination, which turned into a demotion. An investigation into

10

whether the demotion was discriminatory would likely delve into the reasons for that demotion and would not go on to investigate the conditions that Bolton later faced because of that demotion.

Bolton blames the person at the EEOC office who helped him fill out the form for advising him to make the charge brief. ECF 108 at 2-4. He says the initial EEOC advisor he spoke to told him it is better to use as few words as possible in initiating the EEOC charge and the advisor drafted the charge, leaving out details that Bolton would have included. Bolton says that after he was terminated on May 25, he called to update the complaint and check on the investigation. But, other than speaking to EEOC employees, he never amended his charge to include additional details that happened after the demotion.

Bad advice from an EEOC advisor cannot excuse leaving out necessary details in the EEOC charge. As the Seventh Circuit explained:

> [A]n oral charge . . . not reflected in nor reasonably related to the charge actually filed, is not a sufficient predicate for a claim of sexual harassment in [plaintiff's] civil action. 42 U.S.C. § 2000e–5(b) requires that, "Charges shall be in writing under oath or affirmation" and 29 C.F.R. § 1601.9 makes the same requirement. No case suggests that an oral statement to an agency representative is adequate, and notice of such a statement cannot be expected to reach the employer.

*Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 665 (7th Cir. 2000). The Seventh Circuit allows courts to consider details outside the four corners of the EEOC charge if the plaintiff had submitted additional details in writing to the EEOC, such as in an affidavit or in the EEOC intake questionnaire. *See, e.g.*, *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994) (considering details in sworn affidavit that plaintiff filed with the EEOC in

11

support of her charge); *James F. Jackson v. Loc. 705, Int'l Bhd. of Teamsters, AFL-CIO*, No. 95 C 7510, 2002 WL 460841, at *3 (N.D. Ill. Mar. 26, 2002) (considering EEOC intake questionnaire and memorandum along with EEOC charge in determining whether a particular claim was exhausted). Bolton's oral statements to EEOC employees do not qualify for this exception, and therefore the hostile work environment claim must be dismissed as unexhausted.

Because the hostile work environment claim is unexhausted, it is unnecessary to determine whether the allegations in the complaint state a plausible claim for a hostile work environment.

For these reasons, the court:

(1) DENIES Hoosier's motion to dismiss (ECF 89);

(2) GRANTS General Motors' partial motion to dismiss (ECF 101);

(3) DISMISSES the hostile work environment claims against General Motors and Stratosphere; and

(4) REMINDS the parties that this case is proceeding on claims:

    (a) against Stratosphere for monetary damages for publishing an allegedly defamatory statement that he is racist in an email to employees of General Motors, Stratosphere, and Hoosier Personnel Staffing, resulting in a demotion and lost work hours;

    (b) against General Motors, Stratosphere, and Hoosier Personnel Staffing for monetary damages for demoting him to an inferior position in April 2021

because of his race or color in violation of Title VII of the Civil Rights Act of 1964; and

(c) against General Motors and Stratosphere for monetary damages for firing him in May 2021 in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964.

SO ORDERED on November 6, 2024.

                                                s/Holly A. Brady_____
                                                CHIEF JUDGE
                                                UNITED STATES DISTRICT COURT