UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KYLE ALLEN BOLTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:22-CV-228-HAB-SLC |
| GENERAL MOTORS, STRATOSPHERE, and HOOSIER STAFFING, | |
| Defendants. | |

OPINION AND ORDER

Kyle Allen Bolton, a prisoner without a lawyer, filed an amended complaint that the court must review, as required by 28 U.S.C. § 1915A, to identify cognizable claims and dismiss any that are frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. ECF 167. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

Bolton is currently proceeding on three claims: (1) against General Motors, Stratosphere, and Hoosier Personnel Staffing[1] for monetary damages for demoting him to an inferior position in April 2021 because of his race or skin color in violation of Title VII of the Civil Rights Act of 1964; (2) against General Motors and Stratosphere for monetary damages for firing him in May 2021 in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964; and (3) against Stratosphere for monetary damages for publishing an allegedly defamatory statement that he is racist in an email to employees of General Motors, Stratosphere, and Hoosier Personnel Staffing, resulting in a demotion and lost work hours. ECF 142 at 12-13. These claims all stemmed from an allegedly defamatory email in which Bolton was accused of refusing to talk to someone at work because they were Black. Bolton alleges the accusation in the email was believed only because his light skin caused everyone to believe that he was white; had they known he was Black, the accusation would not have been believed. Because of this email, Bolton alleges he was demoted to an inferior job position for discriminatory reasons, and a few weeks later was fired in retaliation for threatening to go to the Equal Employment Opportunity Commission with his complaints.[2]

---

[1] These three entities are all involved in Bolton's employment to some degree. Hoosier Personnel is a staffing agency that employed Bolton and placed him at Stratosphere. Stratosphere, in turn, assigned Bolton to work at a General Motors facility where it was contracted to perform certain services. *See generally* ECF 58 at 2.

[2] The facts of this case have been explained in great detail in previous orders. ECF 58, ECF 95, ECF 142. The court presumes familiarity with the facts and includes them here only as necessary.

Bolton filed a motion for reconsideration, stating that he intended for the defamation claim to go against General Motors as well, clarifying that the allegedly defamatory email originated from General Motors and was spread by Stratosphere. ECF 98, ECF 99, ECF 105, ECF 106, ECF 113, ECF 144. But because the operative complaint (ECF 52) didn't contain allegations that connected General Motors to spreading the allegedly defamatory statement, he could not be granted leave to proceed against General Motors. Instead, the court instructed him to file an amended complaint that added in those allegations if he wanted to pursue such a claim. Bolton has done so.

In the amended complaint, Bolton clarifies that the email originated from a General Motors employee and was then spread by a Stratosphere employee.[3] ECF 167. The court, therefore, will allow him to proceed against both General Motors and Stratosphere on the defamation claim. But in addition to this, Bolton seeks to add additional claims to this lawsuit: a claim for intentional infliction of emotional distress and a claim for tortious interference with a business relationship or a contractual relationship.

**Intentional Infliction of Emotional Distress ("IIED")**

Bolton wants to add a claim for intentional infliction of emotional distress based on the allegedly defamatory email and the resulting discrimination he says he experienced by being demoted to an inferior job position that was more laborious and

---

[3] Bolton identified the Stratosphere employee who spread the email as Jessika in his amended complaint. But through discovery he learned that the person was actually named Jennifer Romandine. ECF 192 at 3. The court takes note of the change. It is not relevant that she was misnamed in the amended complaint because she can be properly identified in any summary judgment motion or later proceedings.

where he was the only employee in that position who was not allowed in the General Motors building. He characterizes the email in which he was accused of not talking to Black people as labeling him a racist white man and alleges that the email, combined with his demotion and differential treatment, constitute extreme and outrageous behavior.

Under Indiana law, a claim for intentional infliction of emotional distress requires that a plaintiff allege "the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another." *Haegert v. McMullan*, 953 N.E.2d 1223, 1235 (Ind. Ct. App. 2011) (quotation marks omitted). Indiana courts cite approvingly this comment from the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). "[L]iability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996) (quoting *Restatement (Second) of Torts* § 46 at 72–73)).

4

In addition, "Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases." *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012) (quotation marks omitted). "Generally, disciplining and terminating an employee is not severe enough to meet the standard to show extreme and outrageous conduct. The employee must show that the termination was extreme or outrageous. This may be accomplished by showing threats, insults, harassment, or harsh language." *Walton v. U.S. Steel Corp.*, No. 2:10-CV-188, 2012 WL 6681725, at *11 (N.D. Ind. Dec. 21, 2012) (citations omitted). "Before events in the workplace can form the basis of an IIED claim, they must be atrocious, meaning that they involve facts far more extreme than those of a typical employment dispute." *Duncombe v. Anchor Indus. Inc.*, No. 316CV00188RLYMPB, 2016 WL 7048052, at *2 (S.D. Ind. Dec. 5, 2016).

For example, in *McCreary*, the Seventh Circuit, applying Indiana law, concluded that an "isolated and brief incident" in which the plaintiff's supervisor called him into his office, "confronted him, pointing his finger into McCreary's face and with a raised voice saying, '[t]his is a bunch of bullshit[,]'" and the supervisor's refusal to reassign the plaintiff to a less physically demanding job to accommodate an injury did not meet the extreme-and-outrageous conduct standard necessary for a claim for intentional infliction of emotional distress. *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1161, 1167 (7th Cir. 1997). Similarly, the Seventh Circuit, also applying Indiana law, concluded in *Cortezano*, that a coworker did not engage in sufficiently extreme and outrageous conduct when he "shouted directly in [plaintiff's] face that [her husband, an

5

undocumented immigrant,] was 'garbage' and a 'piece of shit'" and affirmed the grant of summary judgment on the intentional infliction of emotional distress claim. *Cortezano v. Salin Bank & Tr. Co.*, 680 F.3d 936, 941 (7th Cir. 2012); *see also Duncombe v. Anchor Indus. Inc.*, No. 316CV00188RLYMPB, 2016 WL 7048052 (S.D. Ind. Dec. 5, 2016) (dismissing IIED claim based on allegations that plaintiff was fired for being a "no call, no show" while she was on approved FMLA leave); *Content & Com., Inc. v. Chandler*, No. 1:20-CV-02488-JMS-DLP, 2021 WL 2634605, at *5 (S.D. Ind. June 25, 2021) (dismissing IIED counterclaim based on alleged harassment consisting of "a series of shouting matches including one over the phone and one on an airplane" that was so intense it almost caused the flight to be rerouted (quotation marks and footnote omitted)); *Solomon v. Wardlaw Claim Serv., LLC*, No. 4:17-CV-92, 2018 WL 3715690, at *6 (N.D. Ind. Aug. 3, 2018) (dismissing IIED claim because the plaintiff "has not alleged facts that are more extreme than those of a typical employment claim").

This is contrasted with the facts an Indiana court found sufficient to support an intentional infliction of emotional distress claim: "[F]ormer spouses and business co-owners continued to run their business together after their marriage ended. Following a series of disagreements, the former husband 'erupted into rage' at his former wife in front of their daughter and employees. He called her names, belittled her, threatened her life, kicked her in the stomach, told the employees that she was no longer allowed in the office, and threatened her secretary's life." *McCreary*, 132 F.3d at 1167 (citing *Landis v. Landis*, 664 N.E.2d 754, 754-55 (Ind. Ct. App. 1996)).

6

The outrageous actions Bolton identifies here consist of believing an accusation that Bolton told a Black person he wouldn't speak to her because she is Black, spreading the accusation, demoting him on the basis of this accusation, and treating him differently than other employees who work outdoors by not allowing him inside the building at the beginning and end of his shift. Based on the law set forth above, these facts alone will likely not survive a motion for summary judgment. But Bolton will be allowed to proceed against General Motors on this claim and will have the opportunity to present additional evidence at summary judgment or trial that takes this case outside of merely an employment discrimination claim.

**Tortious Interference with a Business Relationship or Contract**

Bolton next wants to add a claim for tortious interference with a business relationship or tortious interference with a contract against General Motors and Stratosphere. ECF 167 at 20. Regarding General Motors, Bolton explains that General Motors promoted false information and made discriminatory business requests that soured his relationship with Stratosphere and Hoosier Personnel by putting a strain on their employer/employee functions. Bolton alleges that right around the time when these events occurred, he had worked at Stratosphere long enough that he was contractually eligible to be hired directly as a full-time employee, but because of this incident his employment relationship with Stratosphere ended. Therefore, he wants to assert a claim against General Motors for interfering with his relationship with Stratosphere and Hoosier Personnel.

The elements of a claim for tortious interference with a business relationship or with a contract are similar, but have a few differences. A claim for tortious interference with a contract requires a plaintiff to allege "1) the existence of a valid and enforceable contract; 2) the defendant's knowledge of the existence of the contract; 3) the defendant's intentional inducement of breach of the contract; 4) the absence of justification and 5) damages resulting from the defendant's wrongful inducement of the breach." *Huntzinger v. Champion Lake Ski Club, Inc.*, 165 N.E.3d 605, 610 (Ind. Ct. App. 2021). "In this context, unjustified means malicious and exclusively directed to the injury and damage of another." *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 488 (Ind. Ct. App. 2017) (quotation marks omitted). The complaint is unclear about the exact nature of the contract Bolton had with Stratosphere regarding full-time employment, but at the pleading stage, the court will assume that Bolton's contract with Stratosphere gave him the right to full-time employment once he worked there long enough, he met that condition, but General Motors' alleged retaliatory firing caused Stratosphere to breach that contract. To prevail, Bolton will have to prove those facts, as well as that General Motors intentionally took those actions to induce the breach. At this stage, though, Bolton has alleged enough to proceed.

As for a claim of tortious interference with a business relationship, a plaintiff must allege "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *McCollough v. Noblesville Sch.*, 63 N.E.3d

8

334, 344 (Ind. Ct. App. 2016). When the alleged interference is with a business relationship, rather than a contract, the claim "requires some independent illegal action." *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003); *see also CDW LLC v. NETech Corp.*, No. 1:10-CV-0530-SEB-DML, 2013 WL 786448, at *7 (S.D. Ind. Feb. 7, 2013), *report and recommendation adopted*, No. 1:10-CV-0530-SEB-DML, 2013 WL 786446 (S.D. Ind. Mar. 1, 2013) (discussing differences between tortious interference with business relationship and with a contract). Defamation cannot be the illegal action forming the basis of the claim. *See McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 344 (Ind. Ct. App. 2016) ("Defamation, however, does not constitute illegal conduct for the purpose of determining whether one tortiously interfered with the business relationship of another." (quotation marks omitted)). However, the allegedly retaliatory firing in violation of Title VII, could conceivably be the basis for the required illegal conduct. The court will, therefore, allow a claim for tortious interference with a business relationship to proceed against General Motors on the basis of the allegedly retaliatory firing by General Motors, impairing Bolton's business relationship with Stratosphere.

However, there is no basis to conclude that General Motors impaired a contract or a business relationship between Bolton and Hoosier Personnel. Bolton alleges that he was still employed with Hoosier Personnel after he was terminated from General Motors, and the agency placed him in another job. Bolton alleges he continued to be employed by Hoosier Personnel until he resigned. Similarly, Bolton alleges that Stratosphere ruined his business relationship or contract with Hoosier Personnel, but for the same reasons, this claim may not proceed.

**Motion for Leave to File an Interlocutory Appeal**

Finally, Bolton again raises his dissatisfaction with the court's ruling that the statements General Motors wrote on an application for a restraining order against him are absolutely privileged under Indiana law and cannot form the basis of a defamation claim. *See* ECF 95 at 3-4; ECF 158 at 3-4. Specifically, Bolton alleges in his amended complaint that after he was fired, he "began ranting about what happened at GM online." ECF 167 at 31. After watching these videos, General Motors officials applied for a restraining order in state court against Bolton. On the application, General Motors described Bolton's race as "identifies as African American." *Id.* Bolton interprets this as General Motors implying that he is not actually African American, and argues this is a racial slur that should form the basis of a defamation claim.

The court concluded earlier that this statement on a court document fell under the absolute privilege that Indiana law provides to "all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." ECF 95 at 4 (quoting *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008)). The court concluded that statement was absolutely privilege based on Indiana law, which applies a liberal standard to relevancy to include all statements in a judicial proceeding except those that "are so palpably irrelevant to the subject matter of the case that no reasonable person could doubt their irrelevancy and impropriety." *Id.* (quoting *Est. of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 247 (Ind. Ct. App. 2013). The court concluded that identifying Bolton's race was relevant to requesting a restraining order because it is relevant to describe the person against whom the restraining order is directed. *Id.*

10

On a prior motion for reconsideration, Bolton argued that the phrase "identifies as black" should be treated as a racial slur and, thus, irrelevant to the judicial proceeding. ECF 158 at 3-4. The court rejected that argument, applying the test of whether a reasonable person could doubt the irrelevance and impropriety of the phrase to the restraining order proceedings. *Id.* at 4. It concluded "an objective observer would not consider that phrase as equivalent to a racial slur" such that it was palpably irrelevant to describing his race on the restraining order application. *Id.*

Bolton again challenges that conclusion. ECF 167 at 29-45. The court has discretionary authority to reconsider interlocutory orders any time before final judgment. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). This authority "is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571–72 (7th Cir. 2006). Bolton argues that the court erred by making the determination whether the statement was relevant to the judicial proceedings because a jury should make that decision. ECF 167 at 37. However, under Indiana law, this is expressly a legal determination for the court to make. *See Watters v. Dinn*, 666 N.E.2d 433, 437 (Ind. Ct. App. 1996) ("Whether a particular statement is relevant and pertinent to the litigation is purely a legal determination for the court."). The court stands by its ruling that the statement is relevant to the restraining order proceedings, which means that it is absolutely privileged and cannot form the basis of a defamation claim. Because

11

it is absolutely privileged, it is irrelevant whether the statement is true or false or whether it was intended to harm Bolton.

Bolton further expresses an intent to appeal the court's ruling to challenge the finding that the statement is absolutely privileged. The general rule requires a litigant to wait to appeal until there has been a final ruling and all the claims in the lawsuit have been decided. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (noting that Congress intended "to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule"). In order to appeal an order before a final decision, Bolton must receive permission from this court and from the Court of Appeals to file an interlocutory appeal. *See In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 624 (7th Cir. 2010). Because he is representing himself, the court will liberally construe his request as a motion for leave to file an interlocutory appeal.

Pursuant to 28 U.S.C. § 1292(b), an interlocutory appeal can only be taken if the order appealed from "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . .." This standard is not met here. The arguable question of law at issue here is whether the statement "identifies as black" is relevant to the restraining order litigation in the Indiana courts. But the Seventh Circuit has explained that for an interlocutory appeal, "'question of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted." *Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000). The relevance of the statement here is not an abstract

12

question of law. Rather, it is an application of law to fact, like deciding a motion for summary judgment, that is inappropriate for certification for interlocutory appeal. Additionally, appealing this issue will not materially advance the ultimate termination of the litigation; even if the court is wrong on that issue and the claim should go forward, deciding that issue now will not materially advance the ultimate termination of the litigation; other claims will still proceed whether or not the court was correct on this issue. Bolton must wait until the case is over to appeal this decision.

**Conclusion**

The court has reviewed all Bolton's filings that have been received from the court's last order (ECF 158) through April 7, 2021, (ECF 163, ECF 165, ECF 168, ECF 172, ECF 173, ECF 174, ECF 176, ECF 181, ECF 182, ECF 183, ECF 186, ECF 187, ECF188, ECF 189, ECF 190, ECF 191, ECF 192, ECF 193, ECF 196, ECF 197, ECF 198, ECF 201).[4] This order addresses what it deems to be relevant in them. Bolton is advised that he should not continue to send in letters to the court, responding to each of the defendants' filings and arguing the merits of his case. The merits will be addressed at summary judgment or at trial.

For these reasons, the court:

(1) DENIES the implied request to reconsider and for leave to file an interlocutory appeal in the amended complaint (ECF 167);

---

[4] The motion to compel filed on April 7, 2025, (ECF 199) is not fully briefed and therefore is not addressed in this order.

(2) GRANTS Kyle Allen Bolton leave to proceed against General Motors, Stratosphere, and Hoosier Personnel Staffing for monetary damages for demoting him to an inferior position in April 2021 because of his race or skin color in violation of Title VII of the Civil Rights Act of 1964;

(3) GRANTS Kyle Allen Bolton leave to proceed against General Motors and Stratosphere for monetary damages for firing him in May 2021 in retaliation for engaging in activity protected by Title VII of the Civil Rights Act of 1964;

(4) GRANTS Kyle Allen Bolton leave to proceed against General Motors and Stratosphere for monetary damages for publishing an allegedly defamatory statement that he is racist in an email to employees of General Motors, Stratosphere, and Hoosier Personnel Staffing, resulting in a demotion and lost work hours;

(5) GRANTS Kyle Allen Bolton leave to proceed against General Motors for monetary damages on a claim for intentional infliction of emotional distress based on the allegedly defamatory email and the resulting actions in or around May 2021;

(6) GRANTS Kyle Allen Bolton leave to proceed against General Motors on a claim for tortious interference with a contract or business relationship for firing him in May 2021, causing Stratosphere to breach a contract promising Bolton full-time employment and/or impairing the business relationship between Bolton and Stratosphere;

(7) DISMISSES all other claims; and

(8) NOTES that the defendants have already filed answers to the amended complaint (ECF 169, ECF 170, ECF 171), so another answer is not required.

SO ORDERED on April 28, 2025.

                                                                         s/ Holly A. Brady  
                                                                         CHIEF JUDGE  
                                                                         UNITED STATES DISTRICT COURT